UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARTHA J. SMOKER,

    Plaintiff,                                            Case No. 1:11-cv-145

v                                                      HON. JANET T. NEFF

WELLS FARGO BANK, N.A.,

    Defendant.
_____/

## **OPINION**

Plaintiff Martha Smoker, who is represented by counsel, filed this suit against Defendant Wells Fargo Bank, N.A. in state court, seeking injunctive relief to prevent Defendant from evicting her from certain mortgaged property and from completing the foreclosure process. Plaintiff also seeks an award of money damages under several theories. The matter was removed from state court and is currently before the Court on Defendant's Motion for Summary Judgment (Dkt 56), to which Plaintiff filed a Response (Dkt 58), and Defendant filed a Reply (Dkt 59). This motion is being decided without oral argument. *See* W.D. Mich. LCivR 7.2(d). After careful consideration of the parties' arguments and applicable law, the Court grants Defendant's motion.

### **I. BACKGROUND**

On or about January 23, 2004, Plaintiff gave a mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), the nominee for Plaintiff's original lender, Mainstreet Savings Bank, FSB

(Dkt 60, Defendant's Statement of Material Facts [Def.'s SMF]¹ ¶ 3). At all times relevant to this action, Defendant, a national banking association chartered under the National Bank Act, was the loan servicer and/or holder of Plaintiff's mortgage (*id.* ¶¶ 2-3). Plaintiff defaulted on her mortgage loan obligations for failing to make payments when due (*id.* ¶ 4).

On November 9, 2009, Plaintiff was initially pre-qualified for a loan modification (Def.'s SMF ¶ 5). On or about November 16, 2009, Defendant sent a modification package to Plaintiff as part of the loan modification review process, stating that the documents had to be signed and returned with the first payment within ten business days (*id.*). The November 16, 2009 packet included the following language:

> TIME IS OF THE ESSENCE:
>
> <u>If the above documents and contribution amount are not received within ten (10) business days from the date of this letter, we will conclude that you are no longer interested in modifying your existing loan and will cancel your request for a modification</u>. . . . (emphasis supplied in original).
>
> \* \* \* \* \*
>
> PLEASE COMPLETE REQUIRED NEXT STEPS (SIGNATURES and RETURNING DOCUMENTS):
>
> . . .
>
> __ Return ALL of the above documents along with the contribution amount, if required, within ten (10) business days from the date of this letter in the enclosed, self-addressed, prepaid express mail envelope to the address provided below . . . .

---

¹Plaintiff did not supply a responsive Statement of Material Facts as required by this Court's Order (Dkt 41) and Information and Guidelines for Civil Practice § IV.A.2.b. Hence, where noted, the Court has drawn the facts from Defendant's Statement of Material Facts (Dkt 60), and relied on them herein to the extent necessary to resolve this motion.

(*id.* ¶ 6). On December 7, 2009, Plaintiff called Defendant, claiming that she was out of town and would return the documents as soon as possible (*id.* ¶ 7). On December 23, 2009, Plaintiff called Defendant, claiming that a document that was part of the modification package was missing pages (*id.*). The modification effort thereafter expired (*id.* ¶ 8).

As a result of further communications with Plaintiff on February 1, 2010, Defendant preliminarily re-approved a new modification proposal (Def.'s SMF ¶ 9). On February 2, 2010, Defendant sent Plaintiff a second document request for the modification review process, again stating that they had to be signed and returned with the first payment within ten business days (*id.*). This second document request again emphasized the following:

> PLEASE COMPLETE REQUIRED NEXT STEPS (SIGNATURES and RETURNING DOCUMENTS):
>
> . . .
>
> __ Return ALL of the above documents along with the payment, if required, within ten (10) business days from the date of this letter in the enclosed, self-addressed, prepaid express mail envelope to the address provided below . . .
>
> \* \* \* \* \*
>
> TIME IS OF THE ESSENCE:
>
> If the above documents and payments are not received within ten (10) business days from the date of this letter, we will conclude that you are no longer interested in modifying your existing loan and will cancel your request for a modification. . . .

(*id.* ¶ 10). Once again, Plaintiff failed to comply (*id.* ¶ 11). Instead, on or about February 3, 2010, Defendant received from Plaintiff the original documents from November 16, 2009, which were no longer valid (*id.*).

Nevertheless, in a further effort to work with Plaintiff, Defendant tried again to qualify Plaintiff for a loan modification (Def.'s SMF ¶ 12). On or about March 11, 2010, Defendant

prepared yet another modification pre-approval and again generated a new set of documents for a modification review that were sent to Plaintiff, warning that they must be signed and returned with the first payment within ten business days (*id.* ¶ 12). This packet included the following language:

> . . . In order to complete the modification, the following steps must be completed.
>
> . . .
>
> It is imperative that the Loan Modification Agreement, along with the payment of $49.77, be signed and returned in the enclosed, self-addressed, prepaid, express mail envelope. . . . If you do not return this Agreement **by 3/25/2010**, you must contact us if you still wish to be considered for this loan modification.

(*id.* ¶ 13) (emphasis added). Once again, Plaintiff failed to timely return the documents (*id.* ¶ 14).

Defendant attempted to contact the Plaintiff via telephone on March 18, 2010 and March 20, 2010, but Plaintiff's telephone had been disconnected (Def.'s SMF ¶ 15). On March 30, 2010, Defendant sent a letter to Plaintiff trying to make contact but to no avail (*id.*). On or about April 14, 2010, the modification was denied due to Plaintiff's failure to timely return the required documents (*id.* ¶ 16). Plaintiff did not return the documents until April 22, 2010 (*id.* ¶ 17). Defendant never returned a signed modification agreement to her (*id.* ¶ 18).

Because of Plaintiff's continuing loan default, Defendant retained Orlans Associates, P.C. to foreclose the mortgage secured by the property (Def.'s SMF ¶ 19). On or about June 2, 2010, Orlans sent Plaintiff a notice of foreclosure as required under MICH. COMP. LAWS § 600.3205a via first class and registered mail (*id.*). On or about June 25, 2010, Plaintiff contacted Orlans requesting a meeting and a reinstatement quote (*id.* ¶ 20). That same day, Orlans sent Plaintiff a § 3205 financial package to be completed and returned as a condition of scheduling a meeting and modification consideration (*id.*). On or about June 29, 2010, Orlans also sent Plaintiff a reinstatement quote good through July 14, 2010 (*id.* ¶ 21). Because of Plaintiff's contact and request

4

for a meeting, the foreclosure was put on hold for ninety days from the date of the June 2, 2010 initial letter as required by MICH. COMP. LAWS § 600.3205a (*id.* ¶ 22).

However, as repeatedly had occurred before, Plaintiff failed to timely respond to Orlans' document request (Def.'s SMF ¶ 23). Orlans did not receive Plaintiff's financial package until more than two weeks after the 90-day hold expired on August 31, 2010 (*id.*). Nevertheless, Orlans attempted to contact Plaintiff and schedule a meeting (*id.* ¶ 24). Orlans left messages for Plaintiff on or about September 20, 2010; October 16, 2010; and October 19, 2010, and sent correspondence on October 19, 2010 (*id.*).

After finally establishing contact with Plaintiff, and despite the three failed loan modification attempts Defendant had previously considered, Defendant once again reviewed the file for a potential loan modification under the Home Affordable Modification Program (HAMP) (Def.'s SMF ¶ 25). On December 13, 2010, Defendant left a message for Plaintiff asking for additional documents (*id.*). Ultimately, Defendant's review showed that Plaintiff's debt-to-income ratio did not qualify her for a HAMP modification (*id.* ¶ 26). On December 14, 2010, Defendant asked the underwriter for permission to postpone the foreclosure sale to consider additional modification options, but this was denied (*id.* ¶ 27). Defendant never heard from Plaintiff again before the property was sold at a sheriff's sale on December 16, 2010 to Fannie Mae (*id.*).

Plaintiff conceded at her deposition that nobody at Wells Fargo ever told her that a modification had been granted or approved (Def.'s SMF ¶ 28). Plaintiff further understood that the financial documents Defendant requested were "[f]or application for a loan modification" (*id.* ¶ 29). In fact, Plaintiff testified that in a conversation with a Wells Fargo representative in the fall of 2010,

5

the representative told Plaintiff that it appeared she would not qualify for a loan modification (*id.* ¶ 30).

On January 24, 2011, Plaintiff initiated this action in the Ninth Circuit Court for the County of Kalamazoo, Michigan, alleging the following claims: "Injunction" (Count I); "Loan Modification Fraud" (Count II); "Beach [sic] of Contract" (Count III); "Mortgage Broker's, Lender's, and Service's [sic] Licensing Act" (Count IV); "Michigan Collection Practices Act" (Count V); "Fair Debt Collections Practices Act" (Count VI); and "Conversion" (Count VII) (Dkt 1-2 at 2-11). On February 9, 2011, Defendant removed the action to this Court, citing as bases for removal this Court's federal-question jurisdiction, diversity jurisdiction, and supplemental jurisdiction (Dkt 1, Notice of Removal, ¶¶ 4-5).

Defendant removed the action before the state court acted on Plaintiff's Motion for an Ex Parte Temporary Restraining Order, Show Cause, and Preliminary Injunction (Dkt 1-2 at 24). On February 17, 2011, this Court entered a Temporary Restraining Order (TRO), enjoining and restraining Defendant from evicting Plaintiff or otherwise proceeding with the foreclosure process (Dkt 8). Thereafter, the parties made good faith efforts to reach a private resolution of this case and agreed, several times, to extending the TRO while they exchanged financial documents and discussed settlement options. On March 6, 2012, however, the parties informed the Court that their progress was stalled, and this Court entered its order the next day, continuing the TRO in the form of a Preliminary Injunction and also ordering Plaintiff to make monthly escrow payments into her attorney's trust account until further order (Dkt 27).

Following unsuccessful attempts to settle this case with the assistance of the Magistrate Judge in October and November 2012, the parties turned to briefing Defendant's proposed dispositive motion. The parties filed their motion papers in February 2013.

## II. ANALYSIS

### A. Standard of Review

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The initial burden is on the moving party to show that there is no dispute regarding any genuine issue of material fact. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008). "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Id.* In considering a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Slusher,* 540 F.3d at 453. "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestlé USA, Inc.,* 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

### B. Discussion

*Counts I-III.* The first three counts of Plaintiff's Complaint concern her rights in and title to the property at issue. In Count I, Plaintiff alleges that injunctive relief is warranted under MICH. COMP. LAWS § 600.3205a(5) because Defendant sent her a deficient notice and failed to provide her with a statutorily prescribed 90-day pre-foreclosure negotiation period (Dkt 1-2 at 6-7). In Count

7

II, Plaintiff seeks monetary relief based on Defendant's "deceptive and predatory Loan Modification Process" (*id.* at 7). In Count III, Plaintiff seeks monetary relief and rescission of her Mortgage Agreement based on her allegation that Defendant breached its "valid and fully executed Loan Modification Agreement" with her by continuing collection and foreclosure proceedings (*id.* ¶ 42).

Under Michigan law, a plaintiff's rights in and title to a property are extinguished where, as here, the period during which the plaintiff could have redeemed the property has expired. *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942). Further, "[t]he law in Michigan does not allow an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in the absence of a clear showing of fraud, or irregularity." *Goryoka v. Quicken Loan, Inc.*, No. 11-2178, 2013 WL 1104991, at *1 (6th Cir. Mar. 18, 2013) (quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)); *see also Houston v. U.S. Bank Home Mortgage Wisc. Servicing*, No. 11-2444, 2012 WL 5869918, at *5 (6th Cir. Nov. 20, 2012) (citing *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 643 (Mich. 1993) (stating that MICH. COMP. LAWS § 600.3240 "specifies the requirements for redemption, leaving no room for equitable considerations absent fraud, accident, or mistake")).

In its first argument for dismissal of these counts, Defendant characterizes the failure to make this showing as a standing issue (Dkt 57 at 7-9); however, the Sixth Circuit has explained that "[u]se of the term 'standing' in this context is misleading." *Munaco v. Bank of Am.*, No. 12–1325, 2013 WL 362752, at *2 n.2 (6th Cir. Jan. 31, 2013) (collecting cases explaining the confusion about this concept). Like the homeowner in *El-Seblani v. IndyMac Mortgage Servs.*, No. 12-1046, 2013 WL 69226 (6th Cir. Jan. 7, 2013), there is no serious dispute that Plaintiff here has Article III standing to contest the foreclosure sale. *Id.* at *2 (citing *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs.*

8

*(TOC), Inc.*, 528 U.S. 167, 180-81 (2000) (instructing that Article III standing is established when there is a "concrete," "particularized," and "actual" injury that "is fairly traceable to the challenged action of" the defendants and capable of being "redressed by a favorable decision")). Nor is there any serious dispute that Plaintiff has met Michigan's basic standing requirement. *See id.* at *3 (indicating that Michigan courts have long held that a mortgagor may challenge the validity of a statutory foreclosure either through "summary proceedings" in the Michigan courts or by filing a separate lawsuit).

Whether the failure to make the requisite showing is characterized as a standing issue or as a merits determination, it is clear that a plaintiff-mortgagor must meet a "high standard" in order to have a foreclosure set aside after the lapse of the statutory redemption period. *Conlin*, 2013 WL 1442263, at *3. Specifically, "there must be a clear showing of fraud or irregularity as to the foreclosure proceeding itself, and not simply as to any conduct by a defendant." *Houston v. U.S. Bank Home Mortgage Wisc. Servicing*, No. 11-2444, 2012 WL 5869918, at *5 (6th Cir. Nov. 20, 2012) (citing *Freeman v. Wozniak*, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000) (finding no equitable grounds for relief where a plaintiff, due to mental inability, never received notice of a foreclosure whose "procedure was technically proper")).

Plaintiff's claims here lack sufficient merit to meet the high standard imposed by Michigan law on claims to set aside a foreclosure sale. First of all, Plaintiff appears to have abandoned the theories she espoused in Count I—Defendant's purported failure to provide a statutorily prescribed 90-day pre-foreclosure negotiation period and failure to comply with the requisite notice—as she does not address either topic in her response to Defendant's motion. In any event, these theories do not appear capable of supporting this action inasmuch as Defendant has proffered evidence that

9

Plaintiff was sent the requisite notice and that her file was placed on a 90-day hold (Dkt 57 at 9-10; Def. Ex. F). Indeed, rather than demonstrating prejudice to Plaintiff, the thread running throughout this case reveals that like the homeowner in *Lessl v. CitiMortgage, Inc.*, No. 11-2285, 2013 WL 610904, at *1-2 (6th Cir. Feb.19, 2013), Plaintiff here retained "every opportunity to enjoin the foreclosure proceedings or exercise [her] redemption rights."

Apparently in support of Count II ("Loan Modification Fraud"), Plaintiff also states in her response brief, without citation or further explanation, that the fraud in this case "relates to false material representations by Defendant, which they knew were false and which were made recklessly without any knowledge for the truth with the intent that Plaintiff rely and act upon those representations" (Dkt 58 at 4). However, "[s]peculation is not enough to survive Michigan's requirement that plaintiffs plead allegations of fraud or mistake 'with particularity.' MICH. CT. R. 2.112(B)(1)." *Block v. BAC Home Loans Servicing, L.P.*, No. 12-1955, 2013 WL 1223892, at *1 (6th Cir. Mar. 26, 2013); *see also Sweet Air Inv., Inc. v. Kenney*, 739 N.W.2d 656, 659 (Mich. Ct. App. 2007) ("The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside")).

Last, apparently in support of Count III ("Beach [sic] of Contract"), Plaintiff makes various estoppel and partial-performance arguments, emphasizing that Defendant cashed a $943.24 check "for purposes other than the agreement in place" and failed to "tell the Plaintiff that it did not believe that there was an otherwise valid Loan Modification Agreement in place" (Dkt 58 at 4-7). As Defendant points out in Reply, even if one extrapolated from Plaintiff's arguments that the fraud in this case concerned Defendant's purported failure to notify Plaintiff that there was no modification agreement after receiving her signed copy of a modification agreement and check for $943.24, these

events were separate from, and took place before, the foreclosure proceedings Defendant initiated in June 2010 (Dkt 59 at 3). The misconduct necessary to undo the divestment of a property right "must relate to the foreclosure procedure itself." *Conlin*, 2013 WL 1442263, at *3 (quoting *El-Seblani*, *supra* at *4).

Plaintiff makes no other arguments in response to Defendant's motion that would support the clear showing of fraud required to challenge the foreclosure sale after the expiration of the redemption period.[2] Accordingly, Defendant is entitled to summary judgment on Counts I, II and III.

*Count IV.* In Count IV, Plaintiff alleges that Defendant violated the Mortgage Brokers, Lenders, and Servicers Licensing Act, MICH. COMP. LAWS § 445.1672a(2) (Dkt 1-2 at ¶ 45). However, Defendant contends that the Act does not apply to it, a nationally chartered bank (Dkt 57 at 18). The Act expressly does not apply to "[a] depository financial institution," MICH. COMP. LAWS § 445.1675(a), which is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system," MICH. COMP. LAWS § 445.1651a(f). Other than her single conclusory statement that "Defendant wrongfully foreclosed the Plaintiff's house thus violating the Licensing Act . . ." (Dkt 58 at 8), Plaintiff provides no argument in opposition to Defendant's motion, and the Court determines that Defendant is entitled to summary judgment on Count IV.

---

[2]Indeed, the remedy provided for by statute is merely to allow a plaintiff to enjoin a foreclosure by advertisement and convert it to a judicial foreclosure. *See* MICH. COMP. LAWS § 600.3205c(8); *Smith v. Bank of Am. Corp.*, 485 F. App'x 749, 756 (6th Cir. 2012). Because Plaintiff filed this action after the foreclosure sale occurred, there is no foreclosure either to enjoin or convert, and, as Defendant points out (Dkt 57 at 12), the statute does not provide for money damages or other relief.

***Count V.*** In Count V, Plaintiff alleges that Defendant violated Michigan's Collection Practices Act (MCPA), MICH. COMP. LAWS § 339.901 *et seq.* (Dkt 1-2 at ¶ 49). However, Defendant points out that the MCPA is likewise inapplicable to "a state or nationally chartered bank when collecting its own claims" (Dkt 57 at 18, quoting MICH. COMP. LAWS § 339.901(b)(*ii*)). Other than her single conclusory statement that "Defendant wrongfully foreclosed the Plaintiff's house thus violating . . . the Collection Practices Acts" (Dkt 58 at 8), Plaintiff provides no argument in opposition to Defendant's motion, and the Court determines that Defendant is also entitled to summary judgment on Count V.

***Count VI.*** In Count VI, Plaintiff alleges that Defendant violated the Fair Debt Collections Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* (Dkt 1-2 at ¶ 51). Defendant first argues that mortgage foreclosure is not "debt collection" within the meaning of the Act (Dkt 57 at 18); however, that argument was rejected by the Sixth Circuit in *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 463 (6th Cir. 2013). Defendant also argues that there is no evidence in the record to support Plaintiff's claim that Defendant reported false information to a credit reporting agency, failed to communicate with her, or made false representations (Dkt 57 at 19). Plaintiff wholly fails to respond to Defendant's argument, and the Court determines that Defendant is entitled to summary judgment on Count VI.

***Count VII.*** Last, in Count VII, Plaintiff alleges that Defendant committed conversion inasmuch as Defendant refuses to reconvey the property to Plaintiff, despite her immediate right to title to the property (Dkt 1-2 at ¶¶ 56-57). Defendant argues that Plaintiff's claim for conversion fails because Defendant cannot convert real property (Dkt 57 at 19, citing *Makridakis v. Makridakis*, No. 04-437582-CH, 2007 WL 2404622, at *4 (Mich. Ct. App. Aug. 23, 2007) ("common law

12

conversion does not encompass alleged conversion involving real property, only personal property") (citing *Embrey v. Weissman*, 253 N.W.2d 687, 690 (Mich. Ct. App. 1977)). Plaintiff again wholly fails to respond to Defendant's argument, and the Court determines that Defendant is entitled to summary judgment on Count VII.

## III. CONCLUSION

For the foregoing reasons, the Court determines that Defendant's Motion for Summary Judgment (Dkt 56) is properly granted. An Order will be entered consistent with this Opinion. As the Order resolves all pending claims, a corresponding Judgment will also be entered.


DATED: May 13, 2013                                  /s/ Janet T. Neff
                                                     JANET T. NEFF
                                                     United States District Judge